# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, | ) ) ) | CASE NO. 4:12CV1977 |
| PLAINTIFF, | ) ) | JUDGE SARA LIOI |
| vs. | ) ) | **MEMORANDUM OPINION AND ORDER** |
| ESKA V. BAUMAN PAUMIER, et al., | ) ) ) | |
| DEFENDANTS. | ) | |

Before the Court is the motion for summary judgment filed in this interpleader action by defendants Eska V. Bauman Paumier ("Eska")[1] and Randolph Bauman ("Randolph") (collectively, "the Baumans"). (Doc. No. 26.) The motion is opposed by defendant James Ziegler ("Ziegler"). (Doc. No. 32.) The Baumans also filed a reply brief. (Doc. No. 33.) For the reasons discussed herein, the motion is **DENIED**.

## BACKGROUND

On August 1, 2012, The Prudential Insurance Company of America ("Prudential") filed a complaint in interpleader seeking to deposit with this Court insurance proceeds claimed by all three defendants. The insured decedent, Ardes R. Bauman, was the mother of the Baumans and the sister of Ziegler. (Compl. ¶¶ 3-5.) The insured died on or about October 25, 2010, apparently the victim of a homicide, although the death certificate attached to the complaint says that the cause of death is "Pending." (*Id.* Ex. A.)

---

[1] Eska was sued individually and as administratrix of the Estate of Ardes R. Bauman. *See* Compl. Ex. C.

The insured, as a former employee of the State of Ohio, was covered under Group Life Insurance Policy No. G-01049 ("the Plan"). (*Id*. ¶ 9.) Upon her death, basic life benefits in the amount of $45,000 ("the Basic Benefit") and Plan supplemental benefits in the amount of $30,000 ("the Supplemental Benefit") (collectively, "the Death Benefit") became due and payable to the beneficiaries. (*Id*. ¶ 11.)[2] The insured did not designate a beneficiary of the Basic Benefit (*Id*. ¶ 12); Eska was designated as the primary beneficiary of the Supplemental Benefit and Randolph as the contingent beneficiary (*Id*. ¶ 13).

The Beneficiary Rules of the Plan state:

> If there is a Beneficiary for the insurance under a Coverage, it is payable to that Beneficiary. Any amount of insurance under a Coverage for which there is no Beneficiary at your death will be payable to the first of the following: your (a) surviving spouse; (b) surviving child(ren) in equal shares; (c) surviving parent in equal shares; (d) surviving siblings in equal shares; (e) estate.

(*Id*. ¶ 14.) The insured apparently had no surviving spouse. (*Id*. ¶ 15.) Eska made a claim for the Death Benefit, as did Randolph. (*Id*. ¶¶ 17, 18.) According to the complaint, Eska, Randolph, and Ziegler have not been ruled out as persons of interest in connection with the homicide investigation. (*Id*. ¶ 19.)[3] If any of them were to be determined to be responsible for the death of the insured, both federal and state common law (and possibly Ohio Rev. Code § 2105.19) would require forfeiture of any right to the Death Benefit. (*Id*. ¶ 20.)[4]

---

[2] Insurance proceeds totaling $79,876.46 have been deposited with the Clerk of Court. *See* Financial Transaction dated January 14, 2013.

[3] All three defendants deny this allegation. (Doc. No. 5; Doc. No. 16.) Ziegler expressly states in his answer that he has been ruled out as a person of interest. (Doc. No. 16 ¶ 2.)

[4] If Eska were determined to be responsible for the insured's death, the entire Death Benefit would be payable to Randolph. (Compl. ¶ 21.) If Randolph were determined to be responsible for the insured's death, the entire Death Benefit would be payable to Eska. (Compl. ¶ 22.) Because both parents of the insured are deceased, if both Eska and Randolph were determined to be responsible for the insured's death, the entire Death Benefit would be payable to Ziegler. (Compl. ¶¶ 23, 24.) If all three of the defendants were determined to be responsible for the insured's death, the Death Benefit would be payable to the Estate of the insured. (Compl. ¶ 25.)

Under the circumstances of the case, Prudential cannot determine factually or legally who is entitled to the Death Benefit. (Compl. ¶ 27.)

## II. DISCUSSION

**A.  Standard of Review**

When a party files a motion for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

**B.  Analysis**

In their motion for summary judgment, the Baumans assert, without any supporting documentation that would meet the standards of Rule 56(c),[5] that investigators into the death of the insured believe she "was strangled in her van and then transported to another location in a nearby rural area where her body was burned." (Doc. No. 26 at 122.) They assert that, "[a]t the present time, no one has been arrested for her murder or in connection therewith." (*Id.*) Ziegler does not dispute that it is believed that the insured's death was a homicide, or that the investigation is still open. (Doc. No. 32 at 164.)

The Baumans assert that, because there is no evidence that either of them is responsible for their mother's death or, for that matter, that they have ever been suspects in the

---

[5] The Court notes that this dispositive motion was filed *before* the Case Management Conference was conducted. It appears that no discovery was conducted prior to the briefing on the motion. Perhaps this would explain why there is no Rule 56 record for this Court to consider.

3

murder of their mother, they are entitled to recover the Death Benefit.[6] These are facts disputed by Ziegler.

In reply to Ziegler's disputing of the facts, the Baumans argue that "there is no reasonable expectation that any person, specifically either of [them], will be arrested or indicted in the homicide of [the insured] in the near future." (Doc. No. 33 at 174.) They also assert that "[i]t is highly likely that the same facts that exist now will exist at the time of the trial in this case." (*Id.*) Since, in their view, it is possible that this homicide may never be solved, they question whether this Court can indefinitely (or permanently) withhold a ruling on summary judgment.

Clearly *the* material fact in dispute in this case is whether any of these defendants is responsible for the death of the insured and, therefore, subject to forfeiture of any right to the Death Benefit. Although the criminal investigation is open and has not solved this mystery, that does not preclude civil proceedings to determine civil liability.

In *Shrader v. Equitable Life Assur. Soc.*, 485 N.E.2d 1031 (Ohio 1985), the Ohio Supreme Court held: "The identity of a person who intentionally and feloniously causes the death of another can be established in a civil proceeding in order to prevent the wrongdoer from receiving the proceeds of the deceased's life insurance policy." *Id.*, Syllabus.

In *Shrader*, Jean Shrader was strangled to death in a parking garage in Columbus, Ohio. No criminal charges were ever filed as a result of the killing. The decedent's surviving husband, John Shrader, filed suit against Equitable claiming that it had insured his wife's life and that he was the sole primary beneficiary on the insurance policy. Equitable filed an answer and

---

[6] The Baumans assert, again without any supporting evidence, that Ziegler was named as a person of interest in the investigation of the death of the insured. They state that he "was the only family member with any motive to kill Ardes R. Bauman." (Doc. No. 26 at 125-26.) They claim that the insured's death made Ziegler the sole beneficiary of the estate of the mother of Ziegler and the insured and, therefore, doubled his inheritance. (*Id.*)

counterclaim alleging that it held two life insurance policies on the decedent, that John Shrader was the primary beneficiary on both policies, and that Dale Wolford, the decedent's father, was the secondary beneficiary. Both men had filed claims for the insurance proceeds.

Wolford was joined as a party defendant. He assigned all his right, title and interest in the insurance proceeds to the Jean M. Wolford Charitable Trust. The trustees of the Trust (Wolford and his wife, Leah) were then joined as party defendants. The Wolfords filed an answer and counterclaim asserting that Shrader was not entitled to the insurance proceeds because he had killed his wife.

Shrader filed a motion to dismiss, arguing that he could not be denied the insurance proceeds unless he had previously pleaded guilty to or been convicted of aggravated murder, murder, or involuntary manslaughter. The trial court overruled the motion and the case proceeded to trial, where the only disputed fact appeared to be whether Shrader intentionally and feloniously killed his wife. Prior to trial, Shrader had testified at his deposition about his contacts with Danny Kinser. Shrader claimed that Kinser had seen certain marks on Shrader's hands before the killing of Mrs. Shrader. This was significant because the Wolfords contended that the marks were received while Shrader strangled his wife. Shrader had not invoked his Fifth Amendment rights during his deposition.

At the trial Shrader was called on cross-examination and testified that Kinser had told him he had seen the marks on Shrader's hands prior to the killing. Shrader called Kinser on rebuttal and he testified as Shrader said he would. After Kinser was released as a witness, he told the Wolfords that his testimony had been untruthful and that Shrader had offered him a large sum of money if he would perjure himself. When, in light of that information, the Wolfords's attorney sought to question Shrader further about his contacts with Kinser, Shrader invoked his Fifth

5

Amendment right against self-incrimination. The trial court found he had already waived that right and ordered him to testify. When he refused, he was ordered incarcerated until he would comply.

Shrader took an immediate appeal. The appellate court ruled that Shrader had waived his Fifth Amendment rights, but that the trial court had other alternatives to jailing Shrader. On remand, Shrader continued to refuse to testify. The trial court rendered judgment against Shrader and in favor of the Wolfords. The insurance proceeds were ordered to be paid to the Trust.

A sharply divided panel of the court of appeals reversed. Despite recognizing the well-settled rule in Ohio that a beneficiary to insurance proceeds who had intentionally and feloniously caused the death of the insured could not recover the proceeds, the court further held that a civil case cannot be used to determine whether the beneficiary actually killed the insured.

The Supreme Court of Ohio allowed a motion to certify. It determined that Ohio Revised Code § 2105.19, dealing with persons prohibited from benefitting from the death of another, was inapplicable to the case because no one, in particular, Shrader, had ever been convicted of killing Mrs. Shrader.[7] It went on to conclude, however, that the statute was not the exclusive method to determine whether a person should be barred from recovering as a beneficiary under an insurance policy on the life of a person alleged to have been killed by the beneficiary. Common law also bars such a recovery by a beneficiary.

---

[7] Ohio Rev. Code § 2105.19 provides, in relevant part:

> (A) Except as provided in division (C) [relating to incompetence of a beneficiary], no person who is convicted of, pleads guilty to, or is found not guilty by reason of insanity of a violation of or complicity in the violation of section 2903.01 [aggravated murder], 2903.01 [murder], or 2903.03 [voluntary manslaughter] of the Revised Code . . . shall in any way benefit by the death. All property of the decedent, and all money, insurance proceeds, or other property or benefits payable or distributable in respect of the decedent's death, shall pass or be paid or distributed as if the person who caused the death of the decedent had predeceased the decedent. (Emphases added).

Turning then to the question of "whether the identity of one who intentionally and feloniously causes the death of another can be established in a civil proceeding thereby preventing the wrongdoer from receiving the proceeds of the deceased's life insurance policy[,]" *Shrader*, 485 N.E.2d at 1035, the court answered in the affirmative. It pointed out that the case before it was "a civil case where the issue has been raised whether John Shrader is *liable* (not whether he is *guilty*, but whether he is *civilly liable*) for the intentional and felonious killing (not murder) of his wife." *Id*. at 1036, italics in original. The court remarked: "This case then is like any other civil case. The trial court applied the law to the facts, granted judgment for the Wolfords, on their counterclaim, and determined that Shrader was not entitled to the insurance proceeds both because he had failed to prove his claim and because he had unlawfully terminated the life of his wife." *Id*.

The Ohio Supreme Court ultimately concluded that "the identity of a person who intentionally and feloniously caused the death of another can be established in a civil proceeding in order to prevent the wrongdoer from receiving the proceeds of the deceased's life insurance policy. To hold otherwise would be to deprive aggrieved parties of a remedy and the law will always give a remedy." *Id*. at 1037.[8]

---

[8] In a separate concurring opinion, Chief Justice Celebrezze noted that the appellate court had "blurred the difference between *punishment*, which is solely a criminal matter, and *disqualification* from receiving insurance proceeds, which is a proper subject for civil suit." 485 N.E.2d at 1037 (Celebrezze, J., concurring). He further noted that § 2105.19 "merely eliminates the need to prove in a civil action that the beneficiary committed a felonious and intentional killing of the insured." *Id*. at 1038. "When the civil disqualification statute does not apply, as in this case, Ohio's common law is triggered. In that event, a person challenging the beneficiary's claim has the burden of proving the beneficiary's *identity and responsibility* for the intentional killing, by a preponderance of the evidence." *Id*. (italics in original; citation omitted).

In yet another concurrence, Justice Holmes "found it necessary to remind [himself] that this was, and is, a civil proceeding to recover money on an insurance policy--this is not a criminal proceeding." *Id*. at 1038 (Holmes, J., concurring). He noted: "Although the allegations of the counterclaim have criminal connotations, the only real issue before the trial court was whether Shrader, coming into court seeking insurance proceeds, did so with the equities in his favor. This issue being civil, not criminal, may be decided by a preponderance of the evidence, and not do violence to Shrader's civil liberties." *Id*.

### III. CONCLUSION

Because there are material facts in dispute which, under *Shrader* can and should be decided by a civil factfinder, defendants' motion for summary judgment (Doc. No. 26) is **DENIED**.

**IT IS SO ORDERED**.

Dated: July 29, 2013

                                              **HONORABLE SARA LIOI**
                                              **UNITED STATES DISTRICT JUDGE**